Bentley *v.* Heintze.

---

## RANSOM BENTLEY

*v.*

## FERDINAND HEINTZE et al.

A judgment creditor may set aside a sheriff's sale of mortgaged premises when the mortgage was fraudulently given by the judgment debtor to protect his property, for an amount greater than he owed, and the creditor was deterred from bidding at the sale, which was under prior judgments, by the fact that the amount of the fraudulent mortgage, with those judgments, amounted to more than the value of the premises.

---

Creditor's bill. On final hearing on pleadings and proofs.

*Mr. C. H. Hartshorne,* for complainant.

*Mr. C. L. Corbin,* for Mr. Wanner.

*Mr. E. D. Deacon,* for Heintze.

THE CHANCELLOR.

The bill is filed by Ransom Bentley, a judgment creditor of

the defendant John J. Wanner, to reach, for the satisfaction of
his judgment, certain land in Jersey City, which, on the 18th
of January, 1877, was owned by Wanner, and was then sold by
the sheriff of Hudson county under two executions against goods
and lands. One of the executions was issued on a judgment in
the supreme court recovered July 8th, 1876, by Aaron Hirsch
and others against Wanner, for $316.29 ; the other, on a judg-
ment recovered in the Hudson circuit court, September 12th,
1876, by Nicholas B. Cushing against Wanner, for $448.51.
The complainant's judgment was recovered against Wanner in
the supreme court, September 9th, 1876, for $6,000 (penalty;
real debt, $3,187.25). A writ of *fieri facias de bonis et terris*
was issued thereon on the 14th of that month, and levied
on the property the next day. The levies under both the other
judgments were prior to that of the complainant. When the
sale was made there was on the property a mortgage given by
Wanner and his wife to the defendant Heintze, August 18th,
1876, and recorded on the 21st of that month, purporting
to have been given to secure the payment of $7,000 in five
years, with interest half-yearly. The property was struck off
and sold at the sheriff's sale to Solomon Childs, one of the plain-
tiffs in the Hirsch judgment, for $550, and he, pursuant to an
understanding had at the sale between him and Heintze, trans-
ferred his bid to the latter, who paid the money and took the
sheriff's deed for the property to himself accordingly. After
payment of the Hirsch judgment, there was left a balance of
$174.23, which Heintze obtained on account of his mortgage,
on application to the supreme court; his mortgage being subse-
quent in date to the Hirsch judgment, but prior in date and
registry to the other judgments.

The complainant did not, in person or by attorney, attend the
sale. His attorney testifies that he intended to attend and bid
upon the property for the complainant, but abandoned the inten-
tion on learning, from a search of the records, of the existence
of Heintze's mortgage, the amount of which, and the Hirsch
and Cushing judgments, was more than the value of the prop-
erty. Heintze subsequently, by deed of August 23d, 1879, con-

veyed the property to Wanner's wife, subject to the payment of taxes assessed after the year 1876, and water rents which became due before 1875.

The consideration of that deed was $4,000, no part of which was paid, but it was secured by a mortgage from Mrs. Wanner and her husband to Heintze on the property for that sum, payable in three years, with interest. At the time of the delivery of these papers, a lease of the property was given to Heintze for three years, at a rent of $800 a year, payable monthly in advance. The consideration of the deed was made up of the money which was due to Heintze from Wanner when the first-mentioned mortgage was made, and the payment of which that mortgage was given to secure; the money paid for the property at the sheriff's sale, taxes and insurance premium paid on the property by Heintze; money paid by Heintze for, or on account of, repairs to the premises, and the amount of a judgment recovered against Wanner, in the Hudson circuit court, by William M. Fleiss and Benjamin W. Allen, May 26th, 1877, for $797.09 (subsequent to the before-mentioned judgment, all of which were recovered in 1876), which Heintze had purchased (at fifty cents on the dollar) at Wanner's request, and of which he held an assignment, and interest on all those moneys, besides expenses of searches, conveyancing, &c. When the mortgage of $7,000 was given, there was due to Heintze from Wanner only the sum of $502.21, for so much money paid by Heintze, March 25th, 1876, to take up a note given by Wanner to David Ettling, and endorsed by Heintze, and protested for non-payment, and $750 lent by Heintze to Wanner, August 1st, 1876, together about $1,250, besides some interest thereon. How it came that a mortgage for $7,000 was given, Heintze explains as follows: He says that a short time before the mortgage was given, Wanner applied to him to lend him more money, and he refused to do so until after he should have been secured for the money he had already lent him (he says Wanner was then getting worse financially every year), and Wanner told him he would secure him by giving him a mortgage on the house for $7,000, and asked him if that would satisfy him, and Heintze replied that it would. Wanner subse-

quently got the mortgage drawn, and he and his wife executed it, and Wanner brought and delivered it to Heintze. Wanner, according to Heintze, gave him a chattel mortgage also for the same debt, at or about the same time, but, according to Wanner, the chattel mortgage was given previously, to secure the loan of $750. It appears to have been a subsisting and valid security for the money. When the real estate mortgage was given, it was understood between them that Heintze was not to renew the chattel mortgage at the end of the year. They say it was understood that on the credit of the mortgage of the house and land Heintze was to lend Wanner the money to pay debts (some of which were pressing) for repairs which had been done to the house (Heintze occupied it for a restaurant and saloon, as tenant of Wanner) and taxes on the property, and to secure to Heintze payment for repairs which he might make (and which Wanner expected him to make), and advances of money to Wanner from time to time. He seems, however, to have advanced very little, if any, and up to the time of the sheriff's sale, had advanced none. The property was sold the following January. Heintze states that he was not aware of the fact that it was advertised to be sold until the day of the last adjournment, when, he says, he was informed by the sheriff that the sale had been adjourned for a week. He attended the sale. Wanner and his counsel were there, and so was Mr. Childs, the judgment creditor before mentioned. Before the property was put up for sale, Heintze agreed with Wanner's counsel (to use Heintze's own language), that he would buy the property himself at the sale, or get it of whomsoever should buy it, and sell it to Wanner's wife. Heintze bid $500, and Mr. Childs $550, and the property was knocked down to the latter. There was an understanding, however, between Childs (who Heintze says was a friend of his) and Heintze that the latter was to have it, and therefore Heintze did not bid above Childs's bid of $550.

All the testimony on the subject tends directly to the conclusion that the property was bought in by Heintze for Wanner. Heintze says that Wanner wanted him to buy the property, and

suggested to him that he should buy it and sell it to Wanner's wife, because he, Wanner, could not hold it himself.

As before stated, the supreme court, on application of Heintze, ordered that the surplus money, after paying the Hirsch judgment, should be paid over to Heintze on his mortgage. He did not, in fact, receive it, but it was paid over to Wanner by Heintze's direction. Mr. Collins, who was acting for Wanner, and also for Heintze, in obtaining the surplus money, says, on that subject, that he understood that Wanner was in want of money, and begged Heintze to let him have it, and Heintze did so. Notwithstanding their denial, the evidence leads to the conviction that the $7,000 mortgage was intended by both Heintze and Wanner to cover up the property from the creditors of the latter. Heintze says he knew that Wanner was laboring under pecuniary embarrassment; and he also says that he was a friend of his, and he wanted to see him get along. For the $750 Heintze had, as before mentioned, security in a chattel mortgage, and it is not pretended that it was not adequate. Heintze's statement as to how it happened that the $7,000 mortgage was made for so much, when the actual debt was only about $1,300, has already been given. Wanner's is as follows: To the question,

"If you gave him a chattel mortgage on your goods for $750, why did you include that $750 in your $7,000 mortgage?"

he answers:

"That is right, that is included in the $7,000 mortgage; I gave him the $7,000 mortgage; he would not lend me any more money, and then I gave him the $7,000 mortgage to make all his claim good, and if I got in want or trouble, he would help me with more money; on that ground I gave it to him; he was the only friend to help me when I was moneyless, and that is the reason I gave him that mortgage, to secure him and to make sure that he would get his money back."

When asked how he came to give Heintze a mortgage for so much, he answers that Heintze desired to have the mortgage for a larger sum than he owed him, so as to make him secure. In the beginning of August, 1876, the firm of William M. Fleiss

& Co., of New York, sold goods to Wanner on credit. To obtain the credit, Wanner stated to Mr. Fleiss, in substance, that he owned real estate in Hudson county of the value of about $50,000, and alleged that it was unencumbered. About a month afterwards, Mr. Fleiss having learned that he had given the two mortgages, the chattel mortgage and the $7,000 mortgage (but Fleiss then understood that the latter was for only $1,700), sent for him and asked an explanation. Wanner then told him that his object in giving the mortgages was to protect himself against some suits which had been (or might be) brought against him as endorser, in case judgment should be recovered against him; and he gave as his excuse for his action that he did not feel bound to pay the money for the recovery whereof the suits were brought. Mr. Fleiss having ascertained from the record that the real estate mortgage was for $7,000, instead of $1,700, spoke to Heintze on the subject, and asked him about the mortgage; but Heintze would say nothing more than he had given value for it. Again, at the sheriff's sale, nothing whatever was said in regard to the mortgage; no mention was made of it nor any reference to it. Indeed, it appears that Mr. Collins, Wanner's counsel, did not know of its existence until his firm was employed by Heintze to obtain the surplus money. Heintze admits that he has paid rent ever since the sheriff's sale. It appears that he has paid it to Wanner. It is receipted for by Wanner in his own name alone up to September, 1879 (the bill was filed in January following), and since that he appears to have receipted for it in the names of both his wife and himself.

It appears by the evidence that the size and character of the mortgage, the fact that it was a mortgage purporting to secure not past debts and future advances, but a debt of $7,000 and interest, prevented the complainant's attorney from bidding on the property for his client, at the sheriff's sale, by inducing him to believe that it was useless to attend the sale at all. After the Hirsch judgment, came, according to the records, the mortgage for $7,000. Next came the Cushing judgment, and then the complainant's. The complainant's attorney swears that his sole reason for not attending the sale was, that he knew the encum-

brance of the Heintze mortgage was more than the value of the property. He valued the premises at between $6,000 and $7,000. He further says that had it not been for that mortgage, he would have bid enough to have secured at least a part of his client's debt. There were due on the Hirsch judgment, $375.77; on the $7,000 mortgage, only about $1,300, and on the Cushing judgment about $460, altogether about $2,135; and these were all the encumbrances ahead of the complainant's judgment. The apparent amount, however, owing to the delusive character of the complainant's mortgage, was about $7,800. It is urged that there was a cloud upon the title at the time, which was subsequently removed; but it is very evident that it did not, in fact, affect the price of the property at the sheriff's sale; and, besides, the property, which brought only $550, rented then for $800 a year, and has rented for that sum ever since. After Heintze purchased the property, he, at the request of Wanner, bought the Fleiss judgment. He paid for it, as before stated, only fifty cents on the dollar, but he insisted on receiving security by the $4,000 mortgage, for the whole amount due on the judgment. Thus, it may be remarked, if the transaction under consideration is allowed to stand, the Fleiss judgment is paid by Wanner out of the property by means of the shift of the title, to the exclusion of the Cushing judgment and that of the complainant, both of which are older, and under both of which the property was levied upon in 1876, while the Fleiss judgment was not recovered until 1877, after the sheriff's sale. The Fleiss suit was commenced by *capias ad respondendum* ordered on proof of fraud in the contracting of the debt. It appears that the complainant's attorney did not learn of the conveyance from Heintze to Wanner's wife, until a short time before the bill was filed. The complainant resides in Saratoga county, New York.

The sheriff's sale and the deeds to Heintze and Mrs. Wanner, and the mortgage for $4,000, will all be set aside. There will be an account to ascertain the amount justly due to Heintze on the $7,000 mortgage at the time of the sheriff's sale, with interest thereon since that time, and also the rest of the amount due him under his mortgage, as between him and Wanner, and of the

amount due on the Hirsch judgment (including execution fees), with interest from the same period.   Also the amount due on the Cushing judgment and the complainant's judgment, with interest from the same time.   The property will be resold, and out of the net proceeds of the sale, the costs of this suit will first be paid.   Heintze will then be paid the amount found due in the account on the Hirsch judgment, and the amount due on his mortgage at the time of the sheriff's sale, with interest on both; thirdly, the Cushing judgment will be paid; fourthly, the complainant's judgment; fifthly, the amount which, as between Heintze and Wanner, but not as between Heintze and the complainant and Cushing, remains due the former under the mortgage; and if there be any surplus, it is to be paid to Mrs. Wanner.